**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE**

| | |
|---|---|
| DARRYL D. LEWIS,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security,<br><br>　　　　　　Defendant. | NO. C10-1498-TSZ-JPD<br><br><br>REPORT AND RECOMMENDATION |

Plaintiff Darryl D. Lewis appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") which denied his applications for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-83f, after a hearing before an administrative law judge ("ALJ"). For the reasons set forth below, the Court recommends that the Commissioner's decision be reversed and remanded for further proceedings.

## I.　　FACTS AND PROCEDURAL HISTORY

At the time of his administrative hearing, plaintiff was a 47 year-old man with a high school and 2 years of college educational level. Administrative Record ("AR") at 140, 167. His past work experience includes employment in the construction field. AR at 163. Plaintiff was last gainfully employed in May 2008. AR at 15.

REPORT AND RECOMMENDATION - 1

On May 23, 2008, plaintiff filed a claim for SSI payments. He alleges an onset date of June 1, 2005. AR at 13. Plaintiff asserts that he is disabled due to post-traumatic stress disorder ("PTSD") and depressive disorder not otherwise specified. AR at 15.

The Commissioner denied plaintiff's claim initially and on reconsideration. AR at 13. Plaintiff requested an administrative hearing which took place on December 21, 2009. AR at 32-71. On January 22, 2010, the ALJ issued a decision finding plaintiff not disabled and denied benefits based on his finding that plaintiff could perform a specific job existing in significant numbers in the national economy. AR at 13-27. Plaintiff's administrative appeal of the ALJ's decision was denied by the Appeals Council, AR at 1-4, making the ALJ's ruling the "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g). Plaintiff timely filed the present action challenging the Commissioner's decision. Dkt. No. 3.

## II. JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## III. STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 201 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is

susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id*. at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

## IV.   EVALUATING DISABILITY

As the claimant, Mr. Lewis bears the burden of proving that he is disabled within the meaning of the Social Security Act (the "Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled under the Act only if his impairments are of such severity that he is unable to do his previous work, and cannot, considering his age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof during steps one through four. At

step five, the burden shifts to the Commissioner. *Id.* If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps. Step one asks whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b).[1] If he is, disability benefits are denied. If he is not, the Commissioner proceeds to step two. At step two, the claimant must establish that he has one or more medically severe impairments, or combination of impairments, that limit his physical or mental ability to do basic work activities. If the claimant does not have such impairments, he is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled. *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether he can still perform that work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is able to perform his past relevant work, he is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100. If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

---

[1] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit. 20 C.F.R. § 404.1572.

REPORT AND RECOMMENDATION - 4

V.   DECISION BELOW

On January 22, 2010, the ALJ issued a decision finding the following:

1. The claimant has not engaged in substantial gainful activity since May 23, 2008, the application date.

2. The claimant has the following severe impairments: posttraumatic stress disorder (PTSD) and depressive disorder, not otherwise specified.

3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

4. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant can perform unskilled work that involves only occasional contact with the general public, co-workers, and supervisors.

5. The claimant is unable to perform any past relevant work.

6. The claimant was born on XXXXX, 1962 and was 46 years old, which is defined as a younger individual age 18-44, on the date the application was filed.[2]

7. The claimant has at least a high school education and is able to communicate in English.

8. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

10. The claimant has not been under a disability, as defined in the Social Security Act since May 23, 2008, the date the application was filed.

AR at 15-27.

---

[2] The actual date is deleted in accordance with Local Rule CR 5.2, W.D. Washington.

## VI. ISSUES ON APPEAL

The principal issues on appeal are:

1. Does substantial evidence support the ALJ's adverse credibility assessment?

2. Did the ALJ err in his treatment of Dr. Widlan's medical opinions?

3. Did the ALJ err at Step 5 in finding that there were jobs available that the plaintiff could perform with his RFC?

Dkt. No. 13 at 1.

## VII. DISCUSSION

A. <u>Substantial Evidence Supports the ALJ's Adverse Credibility Determination</u>

The ALJ found the plaintiff to be less than fully credible regarding the severity of his symptoms. He offered five reasons for discounting his credibility: (1) plaintiff's provision of false information to his mental health counselors (AR at 20); (2) untruthfulness about his drug and alcohol use (AR at 23); (3) failure to attend mental health appointments and failure to follow treatment not related to his mental health issues (AR at 20); (4) daily activities inconsistent with allegations of debilitating social anxiety and fear of public places (AR at 22-23); and (5) medical records documenting improvement when plaintiff complied with medical advice. AR at 22

As noted above, credibility determinations are within the province of the ALJ's responsibilities, and will not be disturbed, unless they are not supported by substantial evidence. A determination of whether to accept a claimant's subjective symptom testimony requires a two-step analysis. 20 C.F.R. §§ 404.1529, 416.929; *Smolen*, 80 F.3d at 1281; SSR 96-7p. First, the ALJ must determine whether there is a medically determinable impairment that reasonably could be expected to cause the claimant's symptoms. 20 C.F.R. §§ 404.1529(b), 416.929(b); *Smolen*, 80 F.3d at 1281-82; SSR 96-7p. Once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the

claimant's testimony as to the severity of symptoms solely because they are unsupported by objective medical evidence. *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc); *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1988). Absent affirmative evidence showing that the claimant is malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony. *Smolen*, 80 F.3d at 1284; *Reddick*, 157 F.3d at 722.

When evaluating a claimant's credibility, the ALJ must specifically identify what testimony is not credible and what evidence undermines the claimant's complaints; general findings are insufficient. *Smolen*, 80 F.3d at 1284; *Reddick*, 157 F.3d at 722. The ALJ may consider "ordinary techniques of credibility evaluation" including a reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains. *Smolen*, 80 F.3d at 1284; *see also Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

Here, plaintiff argues the ALJ made two errors in his credibility assessment. First, plaintiff challenges the ALJ's citation to alleged inconsistencies regarding plaintiff's use of the bus and second, his reluctance to leave his home, and in particular the ALJ's citation to plaintiff's attendance at AA and NA meetings to support the inconsistency finding. Dkt. No. 13 at 14.

The ALJ did not err. The ALJ provided exhaustive examples setting forth his reasoning as to why the plaintiff was not fully credible, yet plaintiff seizes upon a single sentence in the opinion to suggest that the matter be remanded for a renewed credibility determination. The ALJ wrote "I note the claimant's testimony that he rarely takes the bus because of paranoia and social difficulties, but he reported during a consultative examination that he used the bus for transportation." AR at 23. What the ALJ noted is factually accurate. If this was the only example provided by the ALJ of inconsistencies, then perhaps the plaintiff's argument might carry more weight. It was not.

REPORT AND RECOMMENDATION - 7

Plaintiff also challenges the ALJ's citation of his attendance at AA and NA meetings as improper, because it is a good thing that the plaintiff is attending these meetings. The citation to the meetings, however, was simply to provide context to the ALJ's conclusion that plaintiff can attend and participate in group settings, thereby calling into question the severity of plaintiff's difficulties in a social setting. Moreover, the ALJ's conclusion is also supported by plaintiff's attendance at church and group counseling sessions.

Because the statements made by the ALJ regarding inconsistencies are accurate, and in light of all of the other material and unchallenged findings offered by the ALJ, the Court cannot conclude that the ALJ erred in finding the plaintiff less than fully credible.

B. The ALJ Did Not Err in His Evaluation of the Medical Opinion of Dr. Widlan

On August 7, 2008, plaintiff was evaluated by David Widlan, Ph.D. AR at 242-47. Dr. Widlan diagnosed plaintiff with post-traumatic stress disorder ("PTSD"), major depressive disorder, recurrent, severe with psychotic features, alcohol dependence in partial remission, cocaine dependence in sustained remission, and personality disorder NOS with paranoid features. His Global Assessment of Functioning ("GAF")[3] score was 40. AR at 245.

The ALJ did not give Dr. Widlan's report significant weight:

---

[3] The GAF score is a subjective determination based on a scale of 1 to 100 of "the clinician's judgment of the individual's overall level of functioning." AMERICAN PSYCHIATRIC ASS'N, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 32-34 (4th ed. 2000). A GAF score falls within a particular 10-point range if either the symptom severity or the level of functioning falls within the range. *Id.* at 32. For example, a GAF score of 51-60 indicates "moderate symptoms," such as a flat affect or occasional panic attacks, or "moderate difficulty in social or occupational functioning." *Id.* at 34. A GAF score of 41-50 indicates "[s]erious symptoms," such as suicidal ideation or severe obsessional rituals, or "any serious impairment in social, occupational, or school functioning," such as the lack of friends and/or the inability to keep a job. *Id.* A GAF score of 31-40 indicates "some impairment in reality testing and communication" or "major impairment in several areas, such as work or school, family relations, judgment, thinking or mood." A GAF score of 21-30 indicates "behavior is considerably influenced by delusions or hallucinations" or "serious impairment in communications or judgment" or "inability to function in all areas." *Id.*

> First, his assessment is not consistent with treatment records, as discussed above, which fail to support the extent of the symptoms and limitations alleged. Second, the opinion appears based primarily on claimants's subjective reports, which are not reliable given the inconsistent statements made to Dr. Widlan. Finally, Dr. Widlan's report does not contain any mental status examination findings that would support an inability to perform simple work with limited social contact, in fact, the claimant was able to appropriately intact with and follow instructions given by Dr. Widlan.

AR at 24.

As a matter of law, more weight is given to a treating physician's opinion than to that of a non-treating physician because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989); *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). A treating physician's opinion, however, is not necessarily conclusive as to either a physical condition or the ultimate issue of disability, and can be rejected, whether or not that opinion is contradicted. *Magallanes*, 881 F.2d at 751. If an ALJ rejects the opinion of a treating or examining physician, the ALJ must give clear and convincing reasons for doing so if the opinion is not contradicted by other evidence, and specific and legitimate reasons if it is. *Reddick*, 157 F.3d at 725. "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (citing *Magallanes*, 881 F.2d at 751). The ALJ must do more than merely state his conclusions. "He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id.* (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). Such conclusions must at all times be supported by substantial evidence. *Reddick*, 157 F.3d at 725.

The opinions of examining physicians are to be given more weight than non-examining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Like treating physicians, the uncontradicted opinions of examining physicians may not be rejected without clear and convincing evidence. *Id.* An ALJ may reject the controverted opinions of an examining

REPORT AND RECOMMENDATION - 9

physician only by providing specific and legitimate reasons that are supported by the record. *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005).

Opinions from non-examining medical sources are to be given less weight than treating or examining doctors. *Lester*, 81 F.3d at 831. However, an ALJ must always evaluate the opinions from such sources and may not simply ignore them. In other words, an ALJ must evaluate the opinion of a non-examining source and explain the weight given to it. Social Security Ruling ("SSR") 96-6p, 1996 WL 374180, at *2. Although an ALJ generally gives more weight to an examining doctor's opinion than to a non-examining doctor's opinion, a non-examining doctor's opinion may nonetheless constitute substantial evidence if it is consistent with other independent evidence in the record. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Orn*, 495 F.3d at 632-33.

The reasons given by the ALJ to discount Dr. Widlan's opinions were specific and legitimate and supported by the record. As he noted, many of Dr. Widlan's findings were premised upon plaintiff's self-report. AR at 24. Because plaintiff was found to be less than fully credible, his self-reports can, in fact, impact the validity attached to opinions that are dependent upon those reports. *Bayliss*, 427 F.3d at 1217. As the ALJ noted, plaintiff reported he had "no friends and considerable paranoia." AR at 23, 245. However, this claim was contradicted by the existence of plaintiff's girlfriend, attendance at church and attendance at AA and NA meetings. In addition, Dr. Widlan reported that plaintiff did not attend AA meetings because plaintiff reported he "he cannot deal with the group setting." AR at 242. Even Dr. Widlan noted plaintiff "struggled to articulate specific symptoms and he had a tendency to make outlandish statements. As such he presented as a difficult historian." AR at 243. The ALJ also pointed out that plaintiff underreported his drug use to Dr. Widlan and fabricated reports of auditory hallucinations that were not reported to any other medical providers. The ALJ also found that Dr. Widlan's ultimate opinions were contradicted by some of his own findings. AR at 24. Determining that a medical opinion is contradicted by the same

doctor's notes is "a permissible determination within the ALJ's province. *Bayliss*, 427 F.3d at 1216. The ALJ noted that Dr. Widlan's tests indicated that plaintiff could complete a simple three-step task, which demonstrated he could perform unskilled work. AR at 24, 245. He noted plaintiff's ability to interact appropriately with and follow instructions given by Dr. Widlan, indicating he could perform with limited social contact.

The role of this Court is limited. As noted above, the ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews*, 53 F.3d at 1039. While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Thomas*, 278 F.3d at 954. While it is perhaps possible to construe the medical evidence as urged by the plaintiff, it is not possible to conclude that plaintiff's interpretation is the only rational interpretation. The ALJ did not err in his assessment of Dr. Widlan's opinions.

### C. The ALJ Erred at Step 5

At step four, the ALJ determined plaintiff's RFC and also determined that plaintiff was unable to perform his prior relevant work. Part of the plaintiff's RFC limited plaintiff to unskilled work that involves "only occasional contact with the general public, co-workers, and supervisors." AR at 18. This required the ALJ to make use of a vocational expert ("VE") at Step 5. The ALJ concluded, based on the VE's testimony, that there were 240,000 night cleaner position in the national economy and 4,000 in Washington State. In addition, based on the VE's testimony, there were 22,000 janitor positions in the national economy and 400 in Washington State that plaintiff could perform.

During the hearing, it appears that the ALJ and the VE were speaking past and over each other, so that it was never established that significant jobs exist in the national economy that plaintiff could perform. The ALJ, for example, asked the VE for general cleaning jobs

REPORT AND RECOMMENDATION - 11

that could be performed at night, thereby lessening contact with co-workers, the public, and perhaps supervisors. The VE, after expressing a need to verify the "night" category specified by the ALJ, testified about jobs under the general Dictionary of Titles ("DOT") category number 323.687-014. AR at 61-62. However, this category is not limited to the "night" category, but is a general description for cleaners or housekeepers. AR at 200-01. Accordingly, when the VE testified about the number of jobs existing in the national economy that plaintiff could perform, she did not provide any numbers regarding the night restriction as to which the ALJ was inquiring, or that might otherwise qualify under the limited public, co-worker, and supervisor restrictions. This requires reversal and a remand limited to a Step 5 reevaluation to determine if there are any jobs in the national economy that plaintiff can perform.[4]

## VIII.   CONCLUSION

For the foregoing reasons, the Court recommends that this case be REVERSED and REMANDED to the Commissioner for further proceedings limited to a Step 5 reevaluation. A proposed order accompanies this Report and Recommendation.

DATED this 25th day of May, 2011.

*James P. Donohue*

JAMES P. DONOHUE
United States Magistrate Judge

---

[4] As noted above, the VE also identified 22,000 janitor positions nationally and 400 in Washington State that plaintiff could perform. Plaintiff argued that the small number in Washington would not qualify as "significant numbers" for purposes of Step 5. The Commissioner did not take issue with the argument, thereby conceding the inappropriateness of using the janitorial numbers to satisfy the Commissioner's burden at Step 5.